UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADVANTAGE HEALTHCARE, LTD., | |
| Plaintiff, | Case No. 17-cv-09001 |
| v. | Hon. Judge Sharon Coleman |
| | Hon Magistrate Judge Sheila Finnegan |
| DNA DIAGNOSTICS CENTER, INC., | |
| Defendants. | |

**REPLY IN SUPPORT OF DNA DIAGNOSTIC CENTER, INC'S
MOTION TO DENY CLASS CERTIFICATION AND TO STAY THE MIDP**

Plaintiffs' Response downplays the significance of its counsel's misconduct in the *Technology Training Associates* case by focusing on the procedural posture of that case rather than the substance of the Eleventh Circuit's opinion. The Eleventh Circuit explicitly found that "the record appears to show that the plaintiffs' counsel, Bock Hatch …was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best possible settlement for the case[.]" *Technology Training Assocs., Inc. v. Buccaneers Ltd. P'Ship,* 874 F.3d 692, 697 (11th Cir. 2017). "It is plain from the record that during the negotiations the interests of the named plaintiffs and of Bock Hatch were…adverse to the [members of the very putative class it purported to represent]." *Id.* Accordingly, Bock & Hatch ("Plaintiff's Counsel") apparently "violated its ethical duty to the class." *Id.* This finding is significant: it shows that Plaintiff's Counsel's longstanding pattern and practice of unethical behavior is no longer just directed outwards towards its opponents. Now it is clear counsel will also sell out the very class members it purports to represent – meaning it can no longer be trusted to act as a conscientious fiduciary for class members.

1

In Plaintiff's Response, counsel identifies several cases – all of which involved suits they prosecuted based on information gleaned from the hard drive of an unrepresented broadcaster (B2B) –. [Dkt. # 27, p. 8][1] Counsel presents these cases as if each were a point in its favor, but in truth the cases are more akin to straws on a camel's back. Finally, in 2017, the camel's back broke and several courts found that Plaintiff's Counsel was inadequate to represent the interests of putative class members because of its demonstrated penchant for dubious behavior.[2]

There is no going back. While the cases cited by counsel show that courts were willing to give it the benefit of the doubt for years, the *Allscripts* and *Technology Training* opinions show that Plaintiff's Counsel's pattern of increasingly dubious behavior – which has now reached the level at which it harms the class members themselves – can no longer be ignored.

### I. CLASS CERTIFICATION SHOULD BE DENIED BECAUSE CLASS COUNSEL IS INADEQUATE.

"When class counsel have demonstrated a lack of integrity through misconduct and unethical action, a court can have no confidence that they will act as conscientious fiduciaries of the class." *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489, 495 (7th Cir. 2013)(citation omitted). Here, Plaintiff's Counsel has demonstrated a lack of integrity through *repeated* misconduct and unethical action. Counsel was not disqualified from representing putative classes until last year, but courts began questioning Plaintiff's Counsel's integrity long ago. As far back as 2010, courts inside this district and out began observing that the conduct of Plaintiff's Counsel was "not entirely on the up and up." *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, Case No. 07 C 5456, 2010 WL 2365162, at *6 (N.D. Ill. Jun. 11, 2010) (ruling

---

[1] Plaintiff's Counsel states that it has litigated 71 of these B2B Junk Fax Cases in federal court. *See Machesney v. Lar-Bev of Howell, Inc.*, Case No. 10-10085, 2017 WL 2437207, at *4 (E.D. Mich. Jun. 6, 2017).

[2] A *third* 2017 court opinion similarly denied certification of a class represented by Plaintiff's Counsel due to "concern that the class's attorneys may have sold out the class, in return for a guaranteed attorney's fee." *Machesney v. Lar-Bev of Howell, Inc.*, Case No. 10-10085, 2017 WL 2437207, at *5 (E.D. Mich. Jun. 6, 2017).

vacated in part on other grounds), *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.,* 281 F.R.D. 327, 336 (E.D. Wis. 2012). Judge Posner, writing for a unanimous Seventh Circuit panel, similarly observed that "class counsel have demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class" *Creative Montessori Learning Centers v. Ashford Gear, LLC*, 662 F.3d 913, 917 (7th Cir. 2011).[3] While no courts appear to have disqualified Plaintiff's Counsel as class counsel during that time, Judge Cole relied on the earlier dubious conduct in finding counsel inadequate. In *Allscripts*, Judge Cole noted that "it is disconcerting that two of the Firms in this case (including Bock & Hatch) have been singled out by courts for their behavior." *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, 254 F.Supp.3d 1007, 1031 (N.D. Ill. 2017).

In the context of this prior bad behavior, Judge Cole went on to that Plaintiff's Counsel answered interrogatories without consulting the Plaintiff and either failed to correct factual errors in the answers when it learned of them or – worse — knowingly lying about the correct answer from the beginning. In light of that history, Judge Cole found that Bock & Hatch "simply cannot be counted on to be an adequate class counsel." *Id.* at 1033.[4]

If any question remained about Plaintiff's Counsel's capacity to act as ethical class counsel after *Allscripts*, the question was definitively answered by the Eleventh Circuit in

---

[3] Counsel correctly notes that the specific conduct referred to in these cases was that of co-counsel Anderson + Wanca and argues they should not be held jointly responsible for that conduct. [Dkt # 27, p.10]. However, Plaintiff's Counsel proceeded to prosecute at least 71 of these B2B cases despite knowing that the information at the heart of this cottage industry was dubiously obtained by Anderson + Wanca. As Judge Cole's *Allscripts* opinion makes clear, Counsel's effort to pass the buck for its own decision to continue bringing lawsuits using dubiously-obtained information is unpersuasive.

[4] Counsel tries to explain away the *Allscripts* ruling by noting that the interrogatory answers at issue were signed by Brian Wanca, who is an attorney for Anderson + Wanca rather than Bock & Hatch. However, the exhibits attached to Plaintiff's Response show that Bock & Hatch's signature block was on the fraudulent discovery documents [Dkt # 27-1, pp. 8 and 10; Dkt #27-2, pp.7 and 9]. Moreover, Judge Cole's opinion explains that Plaintiff's Counsel necessarily learned of and failed to correct the fraudulent discovery documents, even if they did not sign them in the first instance. *Allscripts*, 254 F.Supp.3d at 1032. Again, Counsel's effort to pass the buck for its misconduct is unpersuasive.

3

*Technology Training Associates,* 874 F.3d 692, 697 (11th Cir. 2017). Counsel tries to pass this off as irrelevant because the Court was considering adequacy under Fed R. Civ. P. 24 rather than 23, but the Eleventh's Circuit's substantive discussion of Plaintiff's Counsel's unethical behavior is not premised on that procedural posture. Instead, the Eleventh Circuit explicitly found that "the record appears to show that [Bock & Hatch]…was indeed motivated by a desire to grab attorney's fees instead of a desire to secure the best possible settlement for the case[.] *Id.* "It is plain from the record that during the negotiations the interests of [Bock & Hatch] were…adverse to the [members of the very putative class it purported to represent]." *Id.* Accordingly, Plaintiff's Counsel apparently "violated its ethical duty to the class." *Id.*

The *Technology Training Associates* case represents a crossing of the Rubicon. Previously, courts had been willing to grudgingly look past Bock & Hatch's unethical conduct because the misconduct did not "create 'serious doubt that counsel will represent the class loyally.'" *Reliable Money Order*, 281 F.R.D. at 336, quoting *Ashford Gear*, 662 F.3d at 918. Both of those mitigating factor are no longer true – the Eleventh Circuit found that Plaintiff's Counsel itself sold out its own class in an effort to grab attorney's fees. The litany of cases Plaintiff cites finding it to be adequate class counsel *before* the Eleventh Circuit exposed this treachery against counsel's own class members is entirely irrelevant. It is now clear that "selling out the class" is precisely what should be expected when Plaintiff's Counsel is given the opportunity to act as class counsel.[5]

"[M]isconduct that prejudices the class or creates a direct conflict between counsel and the class requires such denial [of class certification]." *McKnight Sales Co.,* 704 F.3d at 498. Now

---

[5] Indeed, another District Judge recently found that Plaintiff's Counsel "may have sold out the class, in return for a guaranteed attorney's fee" by the terms of a settlement agreement that it purported to negotiate on behalf of the class. *Machesney*, 2017 WL 2437207, at *5 (E.D. Mich. Jun. 6, 2017).

4

that Plaintiff's Counsel has shown that its pattern of misconduct includes a willingness to sell out its own putative class members, it can no longer be trusted to act as a conscientious fiduciary on their behalf. The *Technology Training Associates* case demonstrates for the world to see that BHLO's loyalty is not to the classes it represents, but only to itself. Class certification should be denied on this basis.

        **II.    PLAINTIFF'S PROPOSED CLASS IS FATALLY AND INCURABLY OVERBROAD.**

As an independent reason for denying class certification, Plaintiff's proposed class is fatally and incurably overbroad. Indeed, the proposed class is overbroad in two separate ways. First, the proposed class definition includes recipients of faxes that were not advertisements and therefore were not regulated by the TCPA. Second, the proposed class definition includes recipients of faxes that were not unsolicited and therefore were not regulated by the TCPA. Recipients of such faxes have no prima facie claim under the TCPA and cannot be included in a proper class definition.

        **1.    Plaintiff's proposed class definition impermissibly includes recipients of faxes that were not advertisements.**

Plaintiff concedes that faxes only come within the purview of the TCPA if they are "advertisements" but claims its proposed class definition is properly limited to advertisements. [Dkt. # 27, p. 3]. Plaintiff is wrong. "[M]essages whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements." *In re the Matter of Rules & Regs Implementing the Tel. Cons. Prot. Act. Of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3825 (2006). Similarly, "facsimile communications that contain only information…would not be prohibited by the TCPA rules." *Id.* Accordingly, when presented with an informational or transactional fax,

courts have found that "as a matter of that, the fax is not an unsolicited advertisement within the meaning of the TCPA." *Grind Lap Services, Inc. v. UBM LLC,* Case No. 14 C 6448, 2015 WL 6955484 at *3 (N.D. Ill. Nov. 10, 2015)

Crucially, "[a]n incidental advertisement contained in such a facsimile does not convert the entire communication into an advertisement." *In re the Matter of Rules & Regs Implementing the Tel. Cons. Prot. Act. Of 1991*, 21 F.C.C. Rcd. at 3825. *Rather,* the F.C.C. has explicitly held that "a *de minimis* amount of advertising information…does not by itself make a message a commercial message." *Id.* at 3813. Plaintiff's proposed class definition is impermissibly overbroad because it includes all recipients of communications from Defendant "offering" laboratory testing services, even if the offer was incidental to the communication. Recipients of faxes sent for the primary purpose of providing test results, invoices, or account statements would be included in Plaintiff's proposed class definition if the faxes also suggest in passing that the reader might call 1-800-DNA-CENTER for its future testing needs. Recipients of faxes provided primarily for informational purposes would also be included in Plaintiff's proposed class. However, the faxes received by those class members would not fall within the F.C.C. definition of an "advertisement", meaning those class members do not have any prima facie claim under the TCPA and the question of liability cannot be resolved on a class-wide basis.

   **2. Plaintiff's proposed class definition impermissibly includes recipients of faxes that were not unsolicited.**

Plaintiff's proposed class definition also fails because it includes all individuals who received certain faxes from Defendant, even if those individuals solicited the faxes they received. Plaintiff correctly notes that previous case law has held that lack of consent is not a necessary component of a TCPA class definition. However, after the D.C. Circuit's binding decision in *Bais Yaakov*, those cases are no longer good law.

"Since *Bais Yaakov* was decided [in 2017], several courts have found class certification inappropriate in TCPA cases where, 'to determine whether any putative member of the proposed class had a TCPA claim, the Court would first be required to determine whether that proposed member 'solicited' the faxes it received.'" *Alpha Tech Pet Inc. v. LaGasse, LLC*, No. 16 C 4321, 2017 WL 5069946, at *2 (N.D. Ill. Nov. 3, 2017)(Durkin, J.) quoting *Brodsky v. HumanaDental Ins. Co.*, 2017 WL 3704824, at *10 (N.D. Ill. Aug. 28, 2017)(Blakey, J.). This is because consent is no longer merely an affirmative defense: under *Bais Yaakov*, whether a fax was solicited is now determinative of whether the TCPA applies to that fax *at all*. Specifically, the D.C. Circuit held that "the TCPA's clear statutory text reached only unsolicited fax advertisements[.]" *Id.*, citing *Bais Yaakov of Spring Valley v. FCC,* 852 F.3d 1078 at 1082 (D.C. Cir. 2017).

"If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). Since consent now goes to the existence of a prima facie TCPA claim rather than to the existence of an affirmative defense, the identity of those individuals with valid prima facie claims can only be ascertained through a series of individualized inquiries regarding consent, not through any objective criteria.[6] Similarly, the need for individualized answers to the question of consent simply to determine whether a class member can state a prima facie claim destroys the commonality of Plaintiff's proposed class and creates a predominance of individualized issues, preventing class certification under Rule 23(b)(3). *See, e.g., Cholly v. Uptain Grp., Inc.*, No. 15

---

[6] Plaintiff cites a 2006 FCC regulation in order to contend that "[t]he FCC expects 'senders' to have documentation establishing prior express invitation or permission from fax ad recipients" and therefore "the burden of proof rests on the sender to demonstrate that permission was given." (Dkt. # 27, p. 6)(citation omitted). However, since consent now goes to the existence of a *prima facie* claim rather than to the existence of an affirmative defense, the burden is no longer on the Defendant.

C 5030, 2017 WL 449176, at * 4 (N.D. Ill. Dec. 1, 2017), quoting *Woolfkiel v. Intersection Insurance Service, Inc.*, 3030 F.R.D. 287, 294 (N.D. Ill. 2014). (Where individualized evidence is required to determine whether each putative class member can state a prima facie claim, "the individual inquiries necessary to determine class membership will 'inevitably predominate' over any common questions of fact"). [7]

Plaintiff observes that including the qualifier that only individuals who received "unsolicited" faxes are part of the class is impermissible because it would create a "fail-safe class." [Dkt. # 27, pp. 4-5]. Plaintiff is correct that such a class definition would be impermissible under the law. However, the fact that a different potential class definition would *also* be impermissible does not change Plaintiff's burden to provide a permissible class definition of its own. *See Oshana v. Coca-Cola Co.*, 472 D.3d 506, 513 (7th Cir. 2006). To the contrary, the fact that the only proposed alternative class definition Plaintiff can conjure is also impermissible demonstrates that, in light of *Bais Yaakov*, there *is* no permissible class definition and class certification should be denied.

## CONCLUSION

No amount of discovery can change that fact that Bock & Hatch is inadequate class counsel with a demonstrated history including selling out the very class members it was entrusted to represent on multiple occasions. Similarly, no amount of discovery can change the fact that Plaintiff's proposed class is facially and incurably overbroad due to its inclusion of class members who received faxes sent for transactional or informational purposes, particularly in

---

[7] Plaintiff notes that individualized issues do not predominate if defendants "only make vague assertions about consent," [Dkt # 27, p. 7], but that is not the case here. Defendant's Amended Affirmative Defenses provide specific factual allegations demonstrating that individuals working for Plaintiff had established a business relationship between Plaintiff and Defendant on two separate occasions and provided prior express consent for Defendant to send faxes to Plaintiff. [See Dkt. #28-1, at First and Fourth Affirmative Defenses].

light of the *Bais Yaakov* Court's finding that the TCPA does not provide a prima facie cause of action for individuals who received faxes that they solicited. The parties and the Court should not waste time conducting needless discovery to determine what is already evident – class certification should be denied.

                                            Respectfully submitted,

By:   /s/ Eric L. Samore
       Attorney for Defendant

Eric L. Samore, ARDC # 6181345
Yesha S. Hoeppner, ARDC # 6304109
Erin A. Walsh, ARDC # 6291003
Smith Amundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 3, 2018 he served a copy of **REPLY IN SUPPORT OF DNA DIAGNOSTIC CENTER, INC'S MOTION TO DENY CLASS CERTIFICATION AND TO STAY THE MIDP** upon all parties of record via the Court's ECF filing system.

[x]  Pursuant to 28 USC Section 1746(2), I certify under penalty of perjury that the foregoing is true and correct. Executed on: April 3, 2018

_____/s/_____ Eric L. Samore_____