**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS — EASTERN DIVISION**

ADVANTAGE HEALTHCARE, LTD., an )
Illinois corporation, individually and on behalf of )
similarly-situated persons, )
                                                    )     Case No. 17-cv-9001
               Plaintiff, )
        v.                                )     Hon. Sharon Johnson Coleman
                                                    )
DNA DIAGNOSTICS CENTER, INC.,         )     Hon. Sheila Finnegan
                                                    )
              Defendant. )

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT ON PLAINTIFF'S INDIVIDUAL CLAIMS**

# TABLE OF CONTENTS

I. Introduction.................................................................................................................1

II. Statement of Material Facts.......................................................................................1

    A.    Permission and revocation of same..................................................................1

    B.    Established business relationship......................................................................3

III. Standard of Review....................................................................................................4

IV. Argument....................................................................................................................4

    A.    Relevant TCPA provisions and FCC regulations...........................................4

        1.    Under the TCPA, a fax is unsolicited absent prior express invitation or permission from the recipient, and such invitation or permission may be limited, as well as revoked.........................................4

        2.    EBR exemption under the TCPA requires a compliant opt-out notice.................................................................................................6

    B.    DDC did not have permission to send the 2017 fax ads...................................9

        1.    Any "permission" given in 2005 was limited to the sending of one fax........................................................................................................9

        2.    Plaintiff revoked any permission in 2008. .............................................9

    C.    DDC's EBR exemption defense fails. .............................................................14

        1.    Located at the bottom of the page.......................................................14

        2.    Clear and conspicuous.........................................................................14

            a.    Case law regarding "clear and conspicuous" requirements...........15

            b.    DDC's opt-out notices are not "clear and conspicuous." ..............16

               i.    Introductory language..........................................................16

               ii.    DDC's opt-out notices are not "conspicuous."....................16

        3.    Opting out of fax advertisements versus all faxes........................................17

        4.    Stating that *post* opt-out fax advertising is "unlawful." .............................18

        5.    Providing *both* telephone and fax numbers as methods to opt out. ..........18

        6.    Stating that a valid opt-out request must include the fax number(s) for the machine(s) to which the request relates.............................................18

        7.    Stating subsequent permission negates opt-out request............................18

V. Conclusion...................................................................................................................19

## TABLE OF AUTHORITIES

Cases

*Adamick v. Credit Control Services, Inc.*, 832 F. Supp. 2d 744, 748 (W.D. Tex. 2011) ...............5, 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ...................................................4

*Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. 2017)..........................8, 11, 12

*Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 997 (W.D. Wis. 2013).........5, 10, 13

*Bondhus v. Henry Schein, Inc.*, No. 14-22982-Civ, 2015 WL 1968841, at *1 (S.D. Fla. April 30, 2015) ...........................................................................................................8

*Buchholz v. Valarity, LLC*, No. 4:13CV362 TIA, 2014 WL 5849434, at *3, 6 (E.D. Mo. Nov. 12, 2014) .......................................................................................................6, 10

*Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*, No. 17-2161, 2018 WL 733216, at *5 (E.D. La. Feb. 6, 2018) .................................................................7

*Chambers v. Green Tree Servicing, LLC*, No. 3:15-cv-1879-M-BN, 2016 WL 8672775, at *8 (N.D. Tex. Sept. 30, 2016)..........................................................................6, 10

*Erlenbaugh v. U.S.*, 409 U.S. 239, 243-44 (1972) ..........................................................11

*Exclusively Cats Veterinary Hosp. v. Fla. Infusion Svcs., Inc.*, No. 12-15429, 2013 WL 2318462 (E.D. Mich. May 28, 2013) ....................................................................15, 16

*Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018)............................5, 9

*Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 270-71 (3rd Cir. 2013).....................5, 10, 11

*Galbreath v. Time Warner Cable, Inc.*, No. 7:14-CV-61-D, 2015 WL 9450593, at *4 (E.D. N.C. Dec. 22, 2015) ......................................................................................6, 10

*Gutierrez v. Barclays Group*, No. 10-cv-1012 DMS (BGS), 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011) ...............................................................................6, 10, 13

*Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1396-97 (7th Cir. 1995)................................4

*Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 876 (7th Cir. 1992), *cert. denied*, 509 U.S. 904 (1993) ................................................................................................4

*Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013) ........................................................12, 13

*In re Sabrina Javani d/b/a EZ Business Loans, Notice of Apparent Liability for Forfeiture*, EB-TC-12-00000256, 27 FCC Rcd. 7921, 7926-27 (2012) ................................................8

*In re Tim Gibbons, Notice of Apparent Liability for Forfeiture*, EB-TCD-00000234, 27 FCC Rcd. 11432, 11438 (2012)...................................................................................8

*KHS Corp. v. Singer Fin. Corp.*, No. 16-55, 2018 WL 4030699, at *4 (E.D. Pa. Aug. 23, 2018)5, 9

*Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 64 (E.D. Mich. 2016)............................15, 16

*McBride v. Ally Financial, Inc.*, No. 15-867, 2017 WL 3873615, at *!!! (W.D. Pa. Sept. 5, 2017)..6, 10

*MDC Acquisition Co. v. Traveler's Prop. Cas. Co. of Am.*, 545 Fed. Appx. 398, 401 (6th Cir. 2013) .......................................................................................................15, 16

*Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012)..................................................11

*Munro v. King Broadcasting Co.*, No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013)..........................................................................................6, 10

*Osorio v. State Farm Bank*, 746 F.3d 1242, 1255-56 (11th Cir. 2014) ...............................5, 10

*Ryan v. Wersi Elec. GmbH & Co.*, 3 F.3d 174, 179 (7th Cir. 1993)..........................................4

*Smith v. Check-n-Go of Illinois, Inc.*, 200 F.3d 511, 515 (7th Cir. 1999).................................15

*Spine and Sports Chiro., Inc. v. ZirMed, Inc.*, Civil Action No. 3:13-CV-00489-TBR, 2014 WL 2946421, at *18 n. 17 (W.D. Ky. June 30, 2014) ....................................................15

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1045-46 (9th Cir. 2017).......................5, 9

Statutes

47 C.F.R. § 64.1200 (a)..................................................................................................... 14
47 U.S.C. § 227 (b) (1) (C) (i-iii) ................................................................................ 6, 11
47 U.S.C. § 227 (b) (1) (C) (i-iii) and (b) (3) .................................................................. 7
47 U.S.C. § 227 (b) (2) (E) ............................................................................................... 7
47 U.S.C. § 227 (b). ............................................................................... 1, 5, 6, 7, 16, 17
Fed. R. Civ. P. 56 (a) ........................................................................................................ 4
Pub. L. No. 109-21, 119 Stat. 359 (2005 ........................................................................ 6

Other Authorities

47 U.S.C. § 227 (b) (1) (C) (ii) ..................................................................................... 17
English Oxford Online Living Dictionary, https://en.oxforddictionaries.com/definition/clear
    (last visited May 21, 2018) ...................................................................................... 16
Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/clear
    (last visited May 21, 2018). ..................................................................................... 16

Regulations

47 C.F.R. § 64.1200 (a) (4) (iii) (A). ............................................................................ 16
47 C.F.R. § 64.1200 (a) (4) (iii) (A-E) ............................................................................ 7
47 C.F.R. § 64.1200 (a) (4) (v) ........................................................................................ 8
71 FR 25967-01 ............................................................................................................... 12
*In re Bassett*, 285 F.3d 882, 885 (9th Cir. 2002), *cert. denied*, 537 U.S. 1002 (2002) ...................... 15
*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax*
    *Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3791 (2006) ........................................... 6
*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax*
    *Prevention Act of 2005*, 21 F.C.C. Rcd. at 3801. ...................................................... 15
*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Junk Fax*
    *Prevention Act of 2005*, 21 F.C.C. Rcd. 3787 (2006) ................................................. 12
*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*
    *Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. at 3812. ....................................... 17
*Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd.
    13998, 14012-13 (2014) .............................................................................................. 8
*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax*
    *Prevention Act of 2005*, 71 FR 25967-01 ................................................................. 10

Plaintiff, Advantage Healthcare, Ltd. ("Plaintiff"), by counsel, under Fed. R. Civ. P. 56 and Local Rule 56.1 (b), submits this response to defendant DNA Diagnostics Center, Inc.'s ("DDC") motion for summary judgment (ECF 85).

## I. Introduction

Plaintiff sued DDC under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, for sending two "unsolicited" fax ads (ECF 1-1, 1-2)—*i.e.*, Plaintiff had not given prior express invitation or permission ("permission"). The TCPA's prohibition on sending unsolicited fax ads contains a liability exemption where the "sender" has an established business relationship ("EBR") with the recipient of the fax, as long as the fax contains a compliant opt-out notice. 47 U.S.C. § 227 (b) (1) (C) (i-iii). DDC seeks summary judgment, arguing the fax ads were not unsolicited and fell within the EBR exemption. DDC is incorrect.

Assuming DDC obtained permission to send a fax to Plaintiff in 2005 (*i.e.*, 12 years before the fax ads at issue here), that permission (a) was limited to the one fax sent in 2005, or (b) was revoked in a subsequent communication in 2008. And assuming the "relationship" between Plaintiff and DDC constitutes an EBR under the TCPA, the faxes did not contain a compliant "opt-out" notice, and so the EBR exemption provides no "safe harbor."

## II. Statement of Material Facts

The record is comprised of DDC's 22-page Statement of Facts (ECF 85), and Plaintiff's 53-page response thereto ("RSOF") and 8-page Statement of Additional Facts ("SOAF"), incorporated herein by reference. The dispositive record is below.

### A.     Permission and revocation of same.

DDC contends Plaintiff gave permission to receive fax advertisements from DDC in a telephone call on April 5, 2005. ECF 85 ¶ 34 *et al.* In that call, DDC asked to send Plaintiff information about DDC's paternity testing, and Plaintiff agreed. SOAF ¶ 4 (Q. "Can we send you

1

a fax? And can I follow up with brochures?"; A "[Y]ou can send info"). No witness has personal knowledge about this call, but it was logged in DDC's FileMaker database, and this entry contains notes of DDC's representative: "Sure, hold on. Must have went to speak with someone. Said you can send info how does this work. Verified fax and address…." RSOF ¶ 36. This entry is the sole basis for DDC's claim that it had permission, twelve years later in 2017, to send the faxes attached to Plaintiff's Complaint. ECF 85 ¶ 34 *et al.*; ECF 1-1, 1-2.

But the 2005 permission given by Plaintiff—for DDC to send information by fax—was limited to the one fax DDC sent on that date. James Hanigan, on whose interpretation of FileMaker entries DDC relies, testified the only thing requested by DDC in the 2005 call was permission to send one fax on that date, and the only thing permitted by Plaintiff was the sending of that one fax. RSOF ¶¶ 34 *et al.* (the "script/call flow bullet points [for that call] specifically asked if the caller could send that fax, a fax, the one that they were proposing to send"); SOAF ¶ 4 (Caller. "Can we send you a fax? And can I follow up with brochures?"; Called. "[Y]ou can send info."). DDC's protocol of placing follow-up calls confirmed the limited scope of any earlier permission:

> Q:     And so when … the DDC medical marketing team would follow up with a health care provider to whom DDC had already sent a fax and hard mail marketing materials, there would still be … three possibilities. Send them another fax; send them more brochures; send them both -- or actually, … [t]here's a fourth: Don't send them either.
>
> A:     Correct.
>
> Q:     …Is that the kind of thing you'd expect the DDC medical marketing team people to ask: Can we send you another fax? Can we send you more hard marketing materials? Can we send you both?
>
> A.     Yes, that's the right follow-up call.
>
> \*          \*          \*
>
> Q:     And if the [call recipient says] "No," they're telling [DDC] no to the various ways [materials can be sent]. Fair?

2

> A.     Yes. In this case, "Thank you. We still have some." So you're right, we would send nothing.

RSOF ¶¶ 34 *et al.*, SOAF ¶ 8 *et al.* Any permission given by Plaintiff in the 2005 call was limited in scope to one fax, and did not carry forward beyond that one fax.

Ignoring the limited scope of the 2005 permission, DDC says Plaintiff never revoked it. ECF 85 ¶¶ 42–45. The FileMaker record for June 18, 2008 says otherwise, showing DDC again called Plaintiff, again asking to send information about DDC's services. SOAF ¶ 8. But this time Plaintiff said "no." The FileMaker record shows Plaintiff responded: "Thank you, but still have some," and DDC marked the "Disposition" for that call as "Declined." SOAF ¶ 8 *et al.* Hanigan agreed Plaintiff declined DDC's 2008 request to send further information, by fax or otherwise:

> Q:     And if [the call recipient says] "No," they're telling [DDC] no to the various ways [materials can be sent]. Fair?
>
> A.     Yes. In [Plaintiff's] case, "Thank you. We still have some." So you're right, we would send nothing.

SOAF ¶ 8 *et al.*

DDC dismisses the significance of this 2008 entry, arguing Plaintiff only refused permission on that date, but did not revoke permission granted in 2005. ECF 85 ¶ 43. DDC posits that to revoke the 2005 permission, Plaintiff was required to "opt-out" by saying "No, I don't want anything today, and I don't want you to send anything in the future." *Id.* DDC's argument in this regard raises a legal issue addressed below.

**B.     Established business relationship.**

DDC contends the 2005 call created an established business relationship ("EBR") with Plaintiff, allowing DDC to send unsolicited fax ads. ECF 85 ¶ 34 *et al.* Plaintiff disputes this legal conclusion. DDC also asserts Plaintiff never made a compliant opt-out request terminating that

3

EBR exemption. *Id.* at ¶¶ 42–45. Accepting DDC's premise at face value, DDC's EBR exemption "safe harbor" turns on whether its 2017 fax ads contained compliant opt-out notices. DDC argues its opt-out notices were compliant. ECF 86-1, p. 2, 16-18. They were not. The non-compliant aspects of the opt-out notices are detailed in Plaintiff's Statement of Additional Facts. SOAF ¶¶ 24–33.

### III.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

On appeal, summary judgment determinations are subject to *de novo* review. *Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1396–97 (7th Cir. 1995) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts are viewed in the light most favorable to the non-moving party. *Id., citing Ryan v. Wersi Elec. GmbH & Co.*, 3 F.3d 174, 179 (7th Cir. 1993); *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 876 (7th Cir. 1992), *cert. denied*, 509 U.S. 904 (1993).

### IV.  Argument

**A.      Relevant TCPA provisions and FCC regulations.**

    **1.      Under the TCPA, a fax is unsolicited absent prior express invitation or permission from the recipient, and such invitation or permission may be limited, as well as revoked.**

The TCPA prohibits the sending of unsolicited fax advertisements. 47 U.S.C. 227 (b) (1) (C). A fax is unsolicited where it is sent without the recipient's prior express invitation or permission ("permission"). 47 U.S.C. 227 (a) (5). Permission may be given "in writing or otherwise. *Id.*

Permission to receive faxes under the TCPA is limited in scope to faxes related to the reason the recipient gave permission in the first place. *KHS Corp. v. Singer Fin. Corp.*, No. 16-55, 2018 WL 4030699, at *4 (E.D. Pa. Aug. 23, 2018) (last brackets in original), *quoting Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018). "Consumers who provide a [ ] phone number for a limited purpose … do not necessarily expect to receive [ ] calls that go beyond the limited purpose for which oral consent regarding [ ] calls may have been granted. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1045-46 (9th Cir. 2017).

The TCPA covers not only unsolicited faxes, but also unsolicited text messages and robo-calls. 47 U.S.C. § 227 (b). In the texting and robo-call context, the TCPA does not use the terms "invitation or permission," but rather use the term "consent." There is some disagreement as to whether "invitation or permission" and "consent" as used in the TCPA are synonymous,[1] but they are similar in that both serve as the vehicle by which an unsolicited telephonic communication becomes solicited.

Federal courts have uniformly held that consent under the TCPA may be revoked. *Osorio v. State Farm Bank*, 746 F.3d 1242, 1255-56 (11th Cir. 2014) (oral revocation of consent is valid and effective under TCPA); *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 270-71 (3rd Cir. 2013) (same); *Beal v. Wyndham Vacation Resorts, Inc.*, 956 F. Supp. 2d 962, 997 (W.D. Wis. 2013) (same); *Adamick v. Credit Control Services, Inc.*, 832 F. Supp. 2d 744, 748 (W.D. Tex. 2011) (same); *McBride v. Ally Financial, Inc.*, No. 15-867, 2017 WL 3873615, at *1-2 (W.D. Pa. Sept. 5, 2017) (same); *Chambers v. Green Tree Servicing, LLC*, No. 3:15-cv-1879-M-BN, 2016 WL 8672775, at *8 (N.D. Tex. Sept. 30, 2016) (same); *Galbreath v. Time Warner Cable, Inc.*, No. 7:14-CV-61-D,

---

[1]    *Compare G.M. Sign, Inc. v. Stealth Sec. Sys., Inc.*, No. 14–C–09249, 2017 WL 3581160, at *3 (N.D. Ill. Aug. 18, 2017) (using "consent" synonymous with "permission or invitation"), *with Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1034 (N.D. Ill. 2017) ("consent" and "permission" not entirely synonymous).

2015 WL 9450593, at *4 (E.D. N.C. Dec. 22, 2015) (same); *Buchholz v. Valarity, LLC*, No. 4:13CV362 TIA, 2014 WL 5849434, at *3, 6 (E.D. Mo. Nov. 12, 2014) (same); *Munro v. King Broadcasting Co.*, No. C13-1308JLR, 2013 WL 6185233, at *3 (W.D. Wash. Nov. 26, 2013) (same); *Gutierrez v. Barclays Group*, No. 10-cv-1012 DMS (BGS), 2011 WL 579238, at *4 (S.D. Cal. Feb. 9, 2011) (same). Absent a compelling reason to hold otherwise, and there is none, the same should be true in the context of oral revocation of "permission" in the context of the TCPA's fax provisions.[2]

### 2. EBR exemption under the TCPA requires a compliant opt-out notice.

In 2005, Congress enacted the Junk Fax Prevention Act of 2005 ("JFPA"), which amended the fax ad provisions of the TCPA. Pub. L. No. 109-21, 119 Stat. 359 (2005); *see* 47 U.S.C. § 227 (b). The JFPA codified an EBR exemption to the prohibition on sending unsolicited fax ads. 47 U.S.C. § 227 (b) (1) (C) (i-iii); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3791 (2006).

Under the EBR exemption, an unsolicited fax ad violates the TCPA unless the fax contains a compliant opt-out notice. 47 U.S.C. § 227 (b) (1) (C) (i-iii). "Failure to comply with the opt-out requirements is an independent violation of the TCPA and precludes a defendant from asserting an EBR defense." *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*, No. 17-2161, 2018 WL 733216, at *5 (E.D. La. Feb. 6, 2018), *citing* 47 U.S.C. § 227 (b) (1) (C) (i-iii) and (b) (3).

The TCPA expressly provides that an opt-out notice must be "clear and conspicuous," state that the recipient may make an opt-out request, and state that the sender's failure to comply

---

[2]    Defendant does not mention these decisions addressing revocation of "consent." Instead, Defendant argues revocation of "permission" is covered by a specific FCC pronouncement on TCPA fax provisions that supposedly controls. Plaintiff will address Defendant's argument in that regard in Section B.2, *infra*.

with that request "is unlawful." 47 U.S.C. § 227 (b) (2) (D). The TCPA further charges the FCC

with the responsibility to promulgate regulations governing this opt-out notice requirement. 47

U.S.C. § 227 (b) (2) (E). The FCC promulgated the following requirements for a compliant opt-

out notice:

> A notice contained in an advertisement complies with the requirements under this paragraph only if—
>
> (A)  The notice is clear and conspicuous….;
>
> (B)  The notice states that the recipient may make a request to the sender … not to send any future advertisements … and that failure to comply, within 30 days, with such a request … is unlawful;
>
> (C)  The notice sets forth the requirements for an opt-out request under paragraph (a) (4) (v) of this section;
>
> (D)  The notice includes—
>
>> (1)  A domestic contact telephone number and facsimile number for the recipient to transmit such a request to the sender; and
>>
>> (2)  If neither the required telephone number nor facsimile number is a toll-free number, a separate cost-free mechanism including a web site address or email address …; and
>
> (E)  The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

47 C.F.R. § 64.1200 (a) (4) (iii) (A-E) (emphasis added).

Section (a) (4) (v), referenced in subsection (C), *supra*, states:

> (v)  A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—
>
>> (A)  The request identifies the telephone number or numbers of the telephone facsimile machine … to which the request relates;
>>
>> (B)  The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C)     The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

47 C.F.R. § 64.1200 (a) (4) (v).

The FCC has confirmed that substantial compliance does not meet the requirements imposed by the statute. *Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 13998, 14012-13 (2014), *vacated and remanded on other grounds*, *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. 2017). Rather, "full compliance is required." *Id.*[3] *See also Bondhus v. Henry Schein, Inc.*, No. 14-22982-Civ, 2015 WL 1968841, at *1 (S.D. Fla. April 30, 2015) ("FCC rejected ☐ argument … that substantial compliance with section 64.1200 (a) (4) … is sufficient"); *In re Sabrina Javani d/b/a EZ Business Loans, Notice of Apparent Liability for Forfeiture*, EB-TC-12-00000256, 27 FCC Rcd. 7921, 7926-27 (2012) (faxes violated TCPA because opt-out notices were not fully compliant); *In re Tim Gibbons, Notice of Apparent Liability for Forfeiture*, EB-TCD-00000234, 27 FCC Rcd. 11432, 11438 (2012) (same).[4]

---

[3]     An otherwise precedential holding is not invalidated by appellate reversal on other grounds. As such, the FCC's "full compliance" holding in *Bais Yaakov* remains valid legal precedent.

[4]     These decisions confirm the FCC's "full compliance" requirement for opt-out notices remains in effect because the its *Bais Yaakov* ruling was not the source for the "full compliance" requirement.

8

**B.     DDC did not have permission to send the 2017 fax ads.**

    **1.     Any "permission" given in 2005 was limited to the sending of one fax.**

Under the TCPA, "express consent to receive material [must be] 'relate[d]' to the reason why [the recipient] provided [his] ... number in the first place.'" *Singer* 2018 WL 4030699, at *4 (last brackets in original), *quoting Fober*, 886 F.3d at 793. Accordingly, the court must "analyze whether any fax sent to that recipient relates to the reason the contact information was provided in the first place." *Id. See also Van Patten*, 847 F.3d at 1045-46 (9th Cir. 2017) (consent "for a limited purpose" does not "go beyond [that] limited purpose").

Here, Plaintiff engaged in a call with DDC in 2005, and agreed to receive a single fax immediately after that call as a prelude to DDC mailing brochures to Plaintiff. SOAF ¶ 4. That fax was the only fax that "relates to the reason the contact info was provided in the first place," *Singer*, 2018 WL 4030699, at *4; *Fober*, 886 F.3d at 793. Defense witness Hanigan confirmed the sole purpose of that fax was to ensure Plaintiff could access DDC's information if Plaintiff received paternity testing inquiries after the call but before arrival of the brochures. RSOF ¶ 34. Plaintiff thereafter received those brochures, thus terminating the interim permission to fax, if any, that had been given.

DDC's self-serving attempt to portray the limited permission given by Plaintiff during the 2005 call as unlimited permission is contrary to both the law and the facts. DDC did not have permission to send the 2017 faxes, and DDC's motion for summary judgment based on permission should be denied.

    **2.     Plaintiff revoked any permission in 2008.**

Even if the 2005 call gave DDC unlimited permission to send fax ads to Plaintiff, such permission ended in 2008, a decade ago. The record is clear that in 2008, when DDC again called Plaintiff, again asking to send Plaintiff additional information regarding DDC's services, Plaintiff

refused. SOAF ¶ 8; RSOF ¶ 34 *et al.* Hanigan confirmed that Plaintiff's refusal included faxing and mailing. *Id.* That refusal revoked any permission.

As indicated, courts recognize that under the TCPA, a recipient may orally revoke a previously-given solicitation to receive otherwise-impermissible telephonic communications. *Osorio*, 746 F.3d at 1255-56; *Gager*, 727 F.3d at 270-71; *Beal*, 956 F. Supp. 2d at 997; *Adamick*, 832 F. Supp. 2d at 748; *McBride*, 2017 WL 3873615, at *1-2; *Chambers*, 2016 WL 8672775, at *8; *Galbreath*, 2015 WL 9450593, at *4; *Buchholz*, 2014 WL 5849434, at *3, 6; *Munro*, 2013 WL 6185233, at *3; *Gutierrez*, 2011 WL 579238, at *4. These courts have held a consumer's ability to revoke consent, at any time using any reasonable method, orally or in writing, is consistent with the TCPA's remedial purpose. *See, e.g., Gager*, 727 F.3d at 271 (oral revocation of consent sufficient because "TCPA is a remedial statute [] passed to protect consumers from unwanted [communications] …. [and] should be construed to benefit consumers." (internal citations omitted). *See also Osorio*, 746 F.3d at 1256 ("Telling the autodialers to simply stop calling" is valid revocation under the TCPA).

DDC does not cite case decisions holding a different rule applies in the context of the TCPA's fax provisions. Rather, DDC appears to rely on a single sentence in a 2006 FCC pronouncement. ECF 86-1, p. 14, citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 FR 25967-01 ("Express permission need only be secured once from the consumer in order to send facsimile advertisements to that recipient until the consumer revokes such permission by sending an opt-out request to the sender"). DDC suggests this language means revocation of permission in the TCPA fax context can only be accomplished via an opt-out request sufficient to terminate an EBR exemption. For several reasons, this argument fails.

First, prevailing jurisprudence holds that different sections of the same statute should be construed *in pari materia*. *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012), *citing Erlenbaugh v. U.S.*, 409 U.S. 239, 243-44 (1972) ("[U]nder the doctrine of *in pari materia*, words in different sections of the same statute should be construed similarly"). It would be anomalous to hold a strict requirement for revocation of permission applies to the TCPA's fax provisions, when a liberal requirement for revocation of consent applies to its text and robo-call provisions. Second, courts holding oral revocation sufficient in the text and robo-call context have done so based on the TCPA's remedial purpose "to protect consumers" from unwanted communications, and so have construed the TCPA "to benefit consumers." *See*, *e.g.*, *Gager*, 727 F.3d at 271. It would be anomalous to hold the TCPA's remedial purpose makes oral revocation of consent sufficient in the text and robo-call context, but does not make oral revocation of permission sufficient in the fax context.

Third, DDC's focus on EBR opt-out requirements as the touchstone for valid revocation of permission conflates the TCPA's provisions relating to unsolicited versus solicited faxes. The EBR exemption allows a narrow exception to the prohibition on sending <u>un</u>solicited fax ads. 47 U.S.C. § 227 (b) (1) (C) (i-iii). But "permission" is the precondition that makes a fax solicited and beyond the reach of the TCPA. *Bais Yaakov*, 852 F.3d 1078 (D.C. Cir. 2017) (voiding FCC's 2006 regulation requiring opt-out notices on solicited faxes because TCPA does not cover solicited faxes). Adopting the requirements for a valid opt-out request (which terminates the EBR exemption allowing transmission of <u>un</u>solicited faxes) as the requirement for valid revocation of permission (which controls whether a fax is solicited versus unsolicited in the first place) erroneously mixes apples and oranges.

Fourth, and corollary to the foregoing, the FCC's language must be construed in context. This FCC pronouncement introduced a new 2006 regulation that, *inter alia*, enacted the FCC's

solicited fax rule, requiring opt-out notices on both solicited and unsolicited faxes. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787 (2006). As indicated, *Bais Yaakov* voided that rule in its entirety. Consideration of the FCC language on which DDC relies, viewed in this context, reveals that such language may be a carryover of the voided solicited fax rule.

In the same section, just two sentences removed from the language cited by DDC, the FCC said, "In addition, entities that send facsimile advertisements to consumers from whom they obtained permission must include on the advertisements their opt-out notice and contact information to allow consumers to stop unwanted faxes in the future." 71 FR 25967-01, at *25972. The FCC thus perceived its province to prescribe the method by which permission is revoked and future faxes are again made unsolicited (*i.e.*, the language on which DDC relies) as interrelated with its province to require an opt-out notice on solicited faxes. But *Bais Yaakov* held the FCC has no jurisdiction to regulate solicited faxes. The interrelated FCC language cited by DDC similarly purports to reach solicited faxes, and so it too has been impliedly (if not expressly) voided.

Fifth, even if the FCC's 2006 pronouncement is not void per se, it is "untethered" to any statutory or regulatory text, and the Court "must [ ] ignore[ ]" it. *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013) (Easterbrook, J.). The *Turza* court rejected the defendant's reliance on an FCC pronouncement distinguishing advertising faxes from informational faxes containing incidental advertising material, and suggesting the latter are not actionable under the TCPA:

> This passage is mysterious. It does not elaborate on the meaning of the word "advertisement' in the statute or regulation. Instead it discusses the meaning of "informational communication", in a phrase that does not appear in either § 227 or the regulation. It seems to be a species of untethered legislative history—and the Supreme Court has told us that, although legislative history may assist in understanding an ambiguous text, a freestanding declaration untied to an adopted text must be ignored. [ ]

*Id.* at 688 (internal citations omitted). Here too, the FCC's 2006 regulation does not purport to regulate revocation of permission, and so the FCC's pronouncement is a "species of untethered legislative history ... a freestanding declaration untied to an adopted text [that] must be ignored." *Id.*

Finally, DDC's position makes no sense. DDC essentially argues the 2005 telephone call sufficed to create permission, but the 2008 telephone call did not suffice to revoke permission— *i.e.*, a recipient cannot revoke permission in the same manner that it previously gave permission. TCPA case law holds otherwise. *Beal*, 956 F. Supp. 2d at 977, *citing Gutierrez*, 2011 WL 579238, at *4) (holding a consumer should be permitted to revoke consent in the same manner in which it can provide consent). The far more reasonable construction of the FCC language on which DDC relies is that that FCC used the term "opt-out request" loosely to reference any request made to not receive future fax ads, but the requirements for such opt-out requests would vary depending on whether the recipient was opting out of previously-given permission versus opting out of an EBR exemption. Thus, for example, in the section of the FCC's above-referenced pronouncement expressly addressing EBRs and opt-outs related to same, the FCC said, "The Commission notes that the act of terminating the EBR exemption will only terminate the relationship for purposes of receiving communications constituting 'unsolicited advertisements." 71 FR 25967-01, at *25969. The FCC goes on to explain that the language of the TCPA requires an opt-out notice that "instructs the recipient how to request that they not receive future unsolicited facsimile advertisements from the sender." *Id.* But the FCC's treatment of the term "opt-out" is not necessarily restricted to the specific "opt-out" mechanism and requirements of an EBR opt-out, as reflected in the FCC's section heading, "Request To Opt-Out of Future Unsolicited Advertisements." *Id.* at *25970. So, opting out means letting the sender know not to send anymore. If the opt-out is in the EBR context, specific requirements apply for the opt-out

13

to be valid; otherwise, the opt-out—*i.e.*, in the different context of revoking permission—may be by any reasonable means, oral or in writing, that adequately communicates the recipient's revocation of previously-given permission.

DDC's motion for summary judgment based on permission fails.

## C. DDC's EBR exemption defense fails.[5]

As indicated in Section (IV) (A) (2), *supra*, a compliant opt-out notice supporting a valid EBR exemption defense must:

1. Be located at the <u>top or bottom</u> of the first page of the fax;

2. Be "<u>clear and conspicuous</u>;"

3. State that the recipient may request not to receive further fax <u>advertisements</u>;

4. State that the sender's failure to stop sending faxes after receiving an opt-out request is <u>unlawful</u>;

5. Identify methods by which the recipient may communicate an opt-out request that <u>must include a telephone number *and* a fax number</u>;

6. State that in communicating a valid opt-out request, the recipient must provide the fax number(s) of the fax machine(s) to which the request relates;

7. State that an EBR opt-out will not be effective if the recipient thereafter gives express permission to receive fax advertisements from the sender.

*See supra* at § (IV) (A) (2), citing 47 C.F.R. § 64.1200 (a).

### 1. Located at the bottom of the page.

The opt-out notice on DDC's May 2017 fax is not located at the bottom of the page.

### 2. Clear and conspicuous.

---

[5]     Plaintiff does not concede that an EBR exists here. Plaintiff merely agreed, at Defendant's request, to host Defendant's flyer on Plaintiff's premises, available for Plaintiff's interested patients. Finding an EBR in that scenario would mean that hotels have EBRs with every pizza delivery chain whose flyers are sitting on the hotels' front desks available for hungry hotel guests. That proposition is ridiculous, and Plaintiff's counsel is unaware of any case expansively construing EBR to reach such a scenario. Certainly, Defendant has not cited such a case.

a.   **Case law regarding "clear and conspicuous" requirements.**

Drawing from its truth-in-billing rules, the FCC has clarified: "'clear and conspicuous' for purposes of the opt-out notice means … apparent to a reasonable consumer." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. at 3801. "[C]lear and conspicuous" is a question of law, because the "inquiry must be objective, which makes the question legal rather than factual." *Smith v. Check-n-Go of Illinois, Inc.*, 200 F.3d 511, 515 (7th Cir. 1999); *see also In re Bassett*, 285 F.3d 882, 885 (9th Cir. 2002), *cert. denied*, 537 U.S. 1002 (2002) ("We decide conspicuousness as a matter of law. This is not because judges are experts at graphic design, but because subjecting conspicuousness to fact finding would introduce too much uncertainty into the drafting process.").

Courts analyzing opt-out conspicuity in the TCPA context similarly have concluded opt-out notices were not clear and conspicuous. *See, e.g., MDC Acquisition Co. v. Traveler's Prop. Cas. Co. of Am.*, 545 Fed. Appx. 398, 401 (6th Cir. 2013) (not compliant); *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 64 (E.D. Mich. 2016) (not "clear and conspicuous"); *Exclusively Cats Veterinary Hosp. v. Fla. Infusion Svcs., Inc.*, No. 12-15429, 2013 WL 2318462 (E.D. Mich. May 28, 2013) (not "conspicuous"); *Spine and Sports Chiro., Inc. v. ZirMed, Inc.*, Civil Action No. 3:13-CV-00489-TBR, 2014 WL 2946421, at *18 n. 17 (W.D. Ky. June 30, 2014) ("notice is arguably not 'clear and conspicuous,' … because it is in a type-face smaller than the remainder of the ad copy and at the bottom of the page").[6]

---

[6]      *But see Davies v. W.W. Grainger, Inc.*, Case No. 13-cv-03546, 2016 WL 6833902, at *4–5 (N.D. Ill. Nov. 21, 2016) (Coleman, J.) (acknowledging that although notice appeared to not be clear and conspicuous, defendant presented expert testimony that the notice was, in fact, clear and conspicuous, and concluding there was not "enough evidence either way" to entitle any party to a judgment as a matter of law on that issue). Here, Defendant has not offered expert testimony to offset the fact that its notices are neither clear nor conspicuous on their face.

15

### b. DDC's opt-out notices are not "clear and conspicuous."

#### i. Introductory language.

DDCs' notices state, "[I]f you *no longer* wish to receive faxes from DDC…." ECF 1-1, 1-2 (emphasis added). This language falsely implies DDC sent the fax with Plaintiff's permission. The TCPA and the FCC require that a valid opt-out notice be "clear." 47 U.S.C. § 227 (b) (2) (D) (i); 47 C.F.R. § 64.1200 (a) (4) (iii) (A). A common meaning of the adjective "clear" is "free from obscurity or ambiguity; easily understood : unmistakable [as in] a *clear* explanation." Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/clear (last visited May 21, 2018). *See also* English Oxford Online Living Dictionary, https://en.oxforddictionaries.com/definition/clear (last visited May 21, 2018) (defining "clear" as "[e]asy to perceive, understand, or interpret," and "leaving no doubt; obvious or unambiguous"). Measured against the common meaning of the term "clear," DDC's opt-out notice is not clear; it is misleading.

#### ii. DDC's opt-out notices are not "conspicuous."

Courts analyzing opt-out conspicuity in the TCPA context have held notices in small print were not clear and conspicuous. *MDC Acquisition Co. v. Traveler's Prop. Cas. Co. of Am.*, 545 Fed. Appx. 398, 401 (6th Cir. 2013) ("small print at the bottom of the page" not compliant); *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 64 (E.D. Mich. 2016) ("not clear and conspicuous because … in small print at the bottom of the pages…"); *Exclusively Cats Veterinary Hosp. v. Fla. Infusion Svcs., Inc.*, No. 12-15429, 2013 WL 2318462 (E.D. Mich. May 28, 2013) (not conspicuous because in tiny font and not separate from other disclosures).

Here, the opt-out notices are in the smallest, thinnest font on the page, smaller and thinner than any of the advertising content. ECF 1-1, 1-2. They are not distinguished from

advertising content by bolding, italics, or other design features to draw the reader's attention to them. They are not "conspicuous."

### 3. Opting out of fax advertisements versus all faxes.

The notices here are non-compliant because they do not state the recipient may request not to receive fax <u>ads</u>; rather, they state the recipient may request not receive faxes <u>at all</u>, <u>advertising or otherwise</u>. The TCPA and FCC regulations are not directed toward faxing *per se*; they only prohibit unsolicited fax <u>advertising</u>. The EBR exemption requires a notice that provides recipients with information to enable them to opt-out of receiving unsolicited fax <u>advertisements</u>. DDC's notices did not provide that information. They only informed Plaintiff how to opt-out of receiving "faxes" in general.

This is not semantics. The EBR exemption assumes the sender has a business relationship with the recipient, 47 U.S.C. § 227 (b) (1) (C) (i), and presumably has the recipient's fax number for use in furtherance of the relationship. 47 U.S.C. § 227 (b) (1) (C) (ii). A recipient may want to opt-out of receiving future <u>advertising</u> faxes, but not opt-out of receiving non-advertising, business-related faxes. The FCC recognizes this distinction: "We agree … messages whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements for purposes of the TCPA's facsimile advertising rules." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. at 3812.

DDC's notices offered Plaintiff a choice between evils—continue receiving unwanted fax ads, or opt-out of receiving even transactional faxes related to its supposed relationship with DDC. The TCPA requires strict compliance with its opt-out notice requirements. These notices are not compliant.

17

4. **Stating that *post* opt-out fax advertising is "unlawful."**

The notices are non-compliant because they do not state it is "unlawful" for DDC to continue sending fax ads after receiving an opt-out request.

5. **Providing _both_ telephone and fax numbers as methods to opt out.**

DDC's January 2017 fax is non-compliant because it does not provide a fax number by which Plaintiff could submit an opt-out request.

6. **Stating that a valid opt-out request must include the fax number(s) for the machine(s) to which the request relates.**

The notices are non-compliant because they do not state a valid opt-out request must include the fax number(s) for the machine(s) in question. They state that if the recipient wants to opt-out by email, the recipient should "email your fax number" to the provided email address. But to the extent the notices provide a telephone number (ECF 1-1), or both telephone and fax numbers (ECF 1-2), the notices only state "call 1-877-241-6512," and "fax 1-800-825-3084."

7. **Stating subsequent permission negates opt-out request.**

The notices are non-compliant because they do not state that giving permission to receive faxes voids an earlier opt-out request. Congress and the FCC want recipients to know that the protection afforded by a compliant opt-out may be lost if permission is thereafter given, and they placed the obligation on senders to communicate that information in the notice. This is particularly important here, where DDC made verbal representations to Plaintiff regarding the limited scope for which Plaintiff's fax information would be used, and then a decade later unilaterally decided to exceed that scope.

18

### V. Conclusion.

WHEREFORE, Plaintiff prays this Honorable Court deny DDC's motion for summary

judgment.

Dated: November 16, 2018                    Respectfully Submitted,


                                            By:      /s/ Molly E. Stemper

                                            Phillip A. Bock
                                            Daniel J. Cohen
                                            Molly E. Stemper
                                            Bock, Hatch, Lewis and Oppenheim, LLC
                                            134 N. La Salle St., Suite 1000
                                            Chicago, IL 60602
                                            (312)658-5500
                                            molly@classlawyers.com

### CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, I electronically filed the foregoing with the Clerk of
the Court for Northern District of Illinois, Eastern Division, by using the CM/ECF system. I
certify that all participants in the case are registered CM/ECF users and that service will be
accomplished by the CM/ECF system.

                                            By:      /s/ Molly E. Stemper