# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADVANTAGE HEALTHCARE, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-cv-9001 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| ) | |
| DNA DIAGNOSTICS CENTER, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Advantage Healthcare, Ltd. brings this suit against DNA Diagnostics Center, Inc., for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and a state law conversion claim. Currently before the Court is DNA Diagnostics' motion [84] for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, the motion is granted.

**Background**

The following facts are undisputed unless otherwise noted. Advantage Healthcare is a medical facility with its principal place of business in Illinois. DNA Diagnostics is a medical laboratory that offers paternity testing services. Since 1998, DNA Diagnostics utilized its marketing team to build rapport with medical providers with the goal of getting referrals for paternity testing services. James Hanigan managed DNA Diagnostics' medical marking team from 1998 until 2011. The marketing team made outbound telephone calls to medical providers to offer information about DNA Diagnostics' services.

1

DNA Diagnostics used an information database called "FileMaker" to track its communications with medical providers. Hanigan trained employees to use a general verbal script when speaking with medical providers and cover certain points during every phone call. This call began with asking if the medical provider received inquiries about paternity issues and whether the provider had a practice of giving referrals for paternal testing. If so, the representative would ask for permission to send information to further educate them about DNA Diagnostics. Specifically, the representative would ask permission to send a fax immediately and then follow up with brochures by mail which would arrive a day or two later.

DNA Diagnostics made the initial contact with Advantage Healthcare on April 5, 2005. A representative of DNA Diagnostics took notes in FileMaker during the phone call with a woman named "Barb" at Advantage Healthcare. During this call, the representative informed Advantage Healthcare about DNA Diagnostics' services and asked if he could send a fax and brochures by mail. The notes written by the representative in FileMaker state: "Sure, hold on. Must have went to speak with someone. Said you can send info how does this work. verified fax and address [sic]." Dkt. 93 at 28. The notes also contain a fax number for Advantage Healthcare. After the call, the representative immediately faxed a flyer with DNA Diagnostics' information and mailed hard-copy brochures to Advantage Healthcare.

DNA Diagnostics made a follow-up call to Advantage Healthcare on April 11, 2007. The representative spoke with a receptionist at Advantage Healthcare and asked if he could send updated materials. The receptionist stated that Advantage Healthcare still had the DNA Diagnostics' information but would take updated materials, including materials in Spanish.

DNA Diagnostics made another follow-up call on June 18, 2008. The representative asked an employee at Advantage Healthcare if it needed updated materials. The employee at Advantage Healthcare stated "Thank you but we have some." The representative marked "Decline" in the

disposition column on FileMaker. June 18, 2008 was the final time DNA Diagnostics sought permission to send updated materials.

To test whether their marketing efforts were successful in getting referrals, DNA Diagnostics would sometimes make "ghost calls." Here, a representative of DNA Diagnostics would call a medical provider and pose as an individual interested in paternity testing. On April 2, 2013, DNA Diagnostics made a "ghost call" to Advantage Healthcare seeking paternity testing services. An employee of Advantage Healthcare referred the "ghost caller" to DNA Diagnostics. In 2013, DNA Diagnostics sent three fax advertisements to Advantage Healthcare on January 31, June 20, and November 19.

On January 27 and May 17, 2017, DNA Diagnostics sent fax advertisements to Advantage Healthcare. The fax on January 27 contained the following opt-out clause:

> If you no longer wish to receive faxes from DDC, please email your fax number to contact@dnacenter.com or call 1-877-241-6512. We will honor opt-out requests within 30 days.

Dkt. 1-1.

The opt-out clause on the May 17, 2017 fax went as followed:

> If you no longer wish to receive faxes from DDC, please email your fax number to: info@dnacenter.com, call 1-877-241-6512, or fax 1-800-825-3084. We will honor opt-out requests within 30 days.

Dkt.1-2.

Advantage Healthcare alleges the faxes sent on January 27 and May 17, 2017 violated the TCPA's prohibition against unsolicited advertisements. Additionally, Advantage Healthcare claims the fax advertisement's "opt-out" clauses were not in compliance with the TCPA. Count I of the complaint alleges a violation of the TCPA. In Count II of the complaint, Advantage Healthcare alleges conversion for the use of their toner, paper, and time.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, and if done, judgment as a matter of law should be granted in its favor. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). All evidence and inferences must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**Discussion**

The TCPA prohibits a party from sending unsolicited fax advertisements unless the parties have an established business relationship. 47 U.S.C. § 227(b)(1)(c). An "unsolicited advertisement" is defined as any "material sent without prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Federal regulations define "established business relationship" as:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(6).

DNA Diagnostics argues that summary judgment should be granted because the 2017 faxes were sent with prior express consent. Specifically, DNA Diagnostics point to the deposition of Hanigan who testified about the exchange that occurred on April 5, 2005, where Advantage Healthcare provided its fax number and gave DNA Diagnostics permission to send a fax

advertisement. Alternatively, DNA Diagnostics argues Advantage Healthcare's claim fails because the parties have an established business relationship.

It is undisputed that Advantage Healthcare gave DNA Diagnostics permission to send a fax on April 5, 2005. Advantage Healthcare argues, however, that the consent was limited to a single fax and thus DNA Diagnostics did not have permission to send the faxes in 2017. Notwithstanding, Advantage Healthcare's argument seems to contradict the FCC's language stating that "[e]xpress permission need only be secured once." *Rules and Regulations Implement the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 FR 25967-01.

Further, the context to which Advantage Healthcare disclosed its fax number demonstrates consent. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017) (finding that plaintiff gave consent when the defendant's call was directly related to the reason plaintiff provided her number). Hanigan testified that the procedure and protocol for members of DNA Diagnostics' marketing team was to share information about its services with medical providers with the hopes of getting referrals. As such, the representatives would ask for fax numbers in order to provide information about its services.

The evidence shows that Advantage Healthcare provided its fax number in response to DNA Diagnostics seeking to share information about its services. Advantage Healthcare does not dispute whether the 2017 faxes at issue were about DNA Diagnostics' paternity testing services. *See KHS Corp. v. Singer Financial Corp.*, No. 16-55, 2018 WL 4030699 at *4 (E.D. Penn. Aug. 23, 2018) ("When a recipient voluntarily provides a contact number, she provides express consent to receive material "relate[d] to the reason why [she] provided [her] . . . number in the first place.") (internal quotation omitted). Advantage Healthcare has not provided evidence that the consent was limited to a single fax. As such, the Court finds that Advantage Healthcare gave DNA Diagnostics express consent to send fax advertisements.

5

Alternatively, Advantage Healthcare argues that any consent that may have been given in 2005 was revoked in 2008. The Court disagrees. Consumers may revoke consent at any time as long as the revocation "clearly expresses a desire not to receive further [communication]." *See Michel v. Credit Protection Association L.P.*, No. 14-cv-8452, 2017 WL 3620809 at *5 (N.D. Ill. August 23, 2017) (Dow, J.). Here, the record clearly demonstrates that when DNA Diagnostics asked whether updated materials were needed during its phone call on June 18, 2008, Advantage Healthcare responded: "Thank you, but we still have some." Dkt. 102 at 4. This response was far from a revocation of its prior express consent. To be clear, the Court does not find that revocation needed to be in writing or communicated in any specific way to be effective. Nevertheless, the exchange on June 18, 2008 documented in FileMaker does not show that Advantage Healthcare expressed a desire to not receive further faxes from DNA Diagnostic; only that it did not need updated materials at that time. Accordingly, there is no material fact at issue regarding whether the 2017 faxes were sent with prior express consent.[1]

As the Court finds that the 2017 faxes were sent with prior express consent, there is no need to discuss DNA Diagnostic's alternative argument of having an established business relationship. Finally, the claim regarding the opt-out language fails because the Court does not find that the 2017 faxes were unsolicited. *See Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017) (finding that the FCC had no authority to require opt-out clauses on faxes sent with prior consent).

---

[1] The Court notes that such a large lapse of time in between the last phone call and most recent faxes (here, from 2008 until 2017) could potentially raise a question of implied revocation. Nevertheless, staleness of prior express consent was not addressed by the parties.

**Conclusion**

For the reasons explained above, DNA Diagnostics' motion [84] for summary judgment is granted. This case is dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 7/17/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge